**Eric B. Swartz, ISB #6396**
**Joy M. Vega, ISB #7887**
**JONES & SWARTZ PLLC**
1673 W. Shoreline Drive, Suite 200 [83702]
P.O. Box 7808
Boise, ID 83707-7808
Telephone:  (208) 489-8989
Facsimile:  (208) 489-8988
Email: eric@jonesandswartzlaw.com
        joy@jonesandswartzlaw.com
**Attorneys for Plaintiff, Loretta A. Crisell**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORETTA A. CRISELL, an individual,<br><br>               Plaintiff,<br><br>vs.<br><br>T-MOBILE USA, INC., a Delaware corporation,<br><br>              Defendant. | **COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

      **COMES NOW** the Plaintiff, Loretta A. Crisell, by and through her counsel of record, Jones & Swartz PLLC, and alleges and states the following:

### PARTIES, JURISDICTION, AND VENUE

      1.      At all times relevant hereto, Plaintiff Loretta A. Crisell ("Mrs. Crisell") was residing in the county of Ada, state of Idaho.

      2.      At all times relevant hereto, Defendant T-Mobile USA, Inc. ("T-Mobile"), was a Delaware corporation existing pursuant to the laws of the state of Delaware, authorized to conduct business within the state of Idaho, and was in fact conducting business in the state of Idaho.

3.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 as certain of the controversies involve, *inter alia*, claims arising under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); and the Family and Medical Leave Act, 29 U.S.C. §§ 2611, *et seq.* ("FMLA").

4.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Plaintiff's claims which arise under Idaho state law and common law.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because:  (1) T-Mobile is authorized to, and does in fact, conduct business within this judicial district; and (2) the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

6.     Mrs. Crisell has complied with the statutory prerequisites to the commencement of this action by filing an administrative charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") in concurrent jurisdiction with the Idaho Human Rights Commission ("IHRC").   Mrs. Crisell received her Notice of Administrative Dismissal and Right to Sue from the IHRC on February 6, 2013.   Mrs. Crisell received her Notice of Right to Sue from the EEOC on March 13, 2013.

## FACTUAL ALLEGATIONS

7.     Mrs. Crisell was hired by T-Mobile on or about January 26, 2010, as a Customer Service Representative (a.k.a. CSR 1, General Care) at T-Mobile's Meridian, Idaho, Customer Care Call Center.

8.     Mrs. Crisell was hired as a full-time employee and expected to work forty hours per week, accumulated over five, eight-hour shifts.

9.     Upon information and belief, T-Mobile employs more than fifty (50) employees.

10.     In calculating FMLA leave, T-Mobile utilizes a "leave year," which is the rolling

re12-month period measured backward from the date the employee uses any medical leave.

11.     At the time Mrs. Crisell was hired by T-Mobile, she utilized a cane while walking.

12.     In or about early March 2010, Mrs. Crisell was diagnosed with osteoarthritis and a degenerative bone disorder known as avascular necrosis in her left hip.  Mrs. Crisell was told by her medical provider that she would need to undergo left hip replacement surgery within months.

13.     On or about March 16, 2010, Mrs. Crisell fell and fractured her left shoulder and left hip.  From the date of the fall through at least May 6, 2010, Mrs. Crisell was bound to a wheelchair.   Mrs. Crisell requested and understood that she was granted reasonable accommodations from T-Mobile, including the ability to take longer breaks and work fewer hours during her work week.

14.     Mrs. Crisell advised T-Mobile of her diagnosed disabilities in writing in or about March 2010.

15.     On or about May 6, 2010, Mrs. Crisell underwent left hip replacement surgery. During the post-operative timeframe, Mrs. Crisell utilized accrued Legacy Sick Leave and/or paid time off ("PTO").

16.     During the post-operative timeframe of approximately May through July 2010, Mrs. Crisell only walked with the assistance of a walker, both at and away from work. Thereafter, she utilized a cane while walking.

17.     During the post-operative timeframe, T-Mobile allowed Mrs. Crisell a reasonable accommodation through a (non-FMLA) reduced work schedule.  From approximately May 25, 2010 to June 8, 2010, T-Mobile allowed Mrs. Crisell to work four hours per shift.  From about

June 9, 2010 to June 23, 2010, T-Mobile allowed Mrs. Crisell to work six hours per shift. Beginning on or about June 24, 2010, Mrs. Crisell returned to working eight hours per shift.

18.     The reasonable accommodation of a reduced work schedule was necessary due to Mrs. Crisell's medical conditions and the associated severe pain that limited the amount of time she could sit and/or stand.

19.     In or about September 2010, Mrs. Crisell was diagnosed with osteoarthritis and avascular necrosis in her right hip.  On or about November 11, 2010, Mrs. Crisell underwent right hip replacement surgery.

20.     T-Mobile approved her non-FMLA leave of absence for the timeframe of approximately November 2, 2010 to December 21, 2010.  During the post-operative timeframe, Mrs. Crisell utilized short-term disability benefits and accrued Legacy Sick Leave and/or PTO.

21.     During the post-operative timeframe, Mrs. Crisell only walked with the assistance of a walker, both at and away from work.  Thereafter, she utilized a cane while walking.

22.     Pursuant to her medical provider's requirements, Mrs. Crisell was able to return to work on or about January 5, 2011, with the restrictions that she work for only six hours per shift, and that she use an adjustable (sitting to standing) workstation, so that she could alternate sitting and standing.  T-Mobile granted these reasonable accommodations.

23.     The adjustable workstation provided by T-Mobile was not designated solely for Mrs. Crisell's use.  Consequently, if a "pod change" happened and there was not an adjustable workstation within the new "pod" that Mrs. Crisell was assigned to, she would have to work several shifts, up to two weeks, without this accommodation.

24.     On or about February 9, 2011, T-Mobile granted in writing Mrs. Crisell's request for intermittent FMLA leave, consisting of a reduced schedule of six-hour shifts, for the

COMPLAINT AND DEMAND FOR JURY TRIAL – 4

timeframe of February 3, 2011 to March 16, 2011.

25.     On or about August 29, 2011, T-Mobile extended Mrs. Crisell's intermittent FMLA leave and identified the following approved leave circumstances:  (1) 1-2 absences per month; (2) a reduced schedule of 6 hours per day, 5 days a week, until 12/31/11; (3) absences on 2/10/11 and 2/11/11; and (4) intermittent time as needed for appointments.  All leave for these reasons, during this period, was designated FMLA leave.

26.     These FMLA accommodations were necessary due to Mrs. Crisell's medical conditions, medical appointments, and the associated severe pain that limited the amount of time she could sit and/or stand.

27.     On or about October 4, 2011, T-Mobile advised Mrs. Crisell that her leave of absence balance for FMLA had been exhausted as of October 1, 2011.

28.     In fact, Mrs. Crisell did not exhaust her approved FMLA hours until approximately November 4, 2011.

29.     In response to the erroneous notice, Mrs. Crisell filed an FMLA Request for Accommodation in early October 2011.

30.     On or about October 13, 2011, T-Mobile denied Mrs. Crisell's FMLA leave request.

31.     Also on or about October 13, 2011, T-Mobile requested that Mrs. Crisell's healthcare provider complete a Request for Accommodation form.

32.     T-Mobile's request for the completion of the form was a result of T-Mobile knowing of Mrs. Crisell's serious health condition and disability and her continuing need for accommodation.  Mrs. Crisell still had about a month's worth of FMLA leave available when T-Mobile was requiring her to have her medical provider certify her Request for Accommodation.

33.     On or about October 31, 2011, after receiving responses to its earlier requests for information, T-Mobile requested additional information from Mrs. Crisell's medical provider through a Medical Documentation for Requested Accommodation form.

34.     On or about October 31, 2011, Mrs. Crisell submitted a Request for Accommodation that described the requested accommodations as being a reduced schedule of five days per week at six hours per day and three absentee days per month until June 2012, and an adjustable work station.  Mrs. Crisell understood that this Request for Accommodation was approved through the end of December 2011.

35.     Regardless of the approval of Mrs. Crisell's October 31, 2011 Request for Accommodation, on or about November 28, 2011, T-Mobile's Human Resources representative, Jeff Leichty, told Mrs. Crisell that she would be required to return to working eight-hour shifts the next week – beginning on or about December 5, 2011.

36.     On or about December 2, 2011, Mrs. Crisell advised her supervisor, Tammy Middleton, that Mrs. Crisell's doctor had not released her to work eight-hour shifts.  Mrs. Crisell further advised Ms. Middleton that Mrs. Crisell would not be able to meet with her doctor to learn whether she could return to work full time until December 15, 2012.

37.     Mrs. Crisell continued to work her reduced schedule of six-hour shifts until December 11, 2011.

38.     On December 11, 2011, T-Mobile's Human Resources representative, Jeff Leichty, and Mrs. Crisell's supervisor, Blake Ewing, asked Mrs. Crisell whether she would ever be able to return to work full time.

39.     In response to Messrs. Leichty and Ewing's inquiry, Mrs. Crisell advised them that her doctor believed she would be able to return to work full time – as tolerated.

40.     In response to Mrs. Crisell, Messrs. Leichty and Ewing advised Mrs. Crisell that if she wanted the reasonable accommodation of a reduced, six-hour per day shift, work schedule, T-Mobile would require her to relocate to another state, but only if a position was available at T-Mobile's office location in that state.

41.     Mrs. Crisell responded to Messrs. Leichty and Ewing that she could not relocate to another state.  She also asked whether there was another position available in Idaho, and Messrs. Leichty and Ewing advised her that there was not.

42.     On December 11, 2011, T-Mobile terminated Mrs. Crisell from her employment as a customer service representative at T-Mobile.

43.     On December 11, 2011, after T-Mobile terminated Mrs. Crisell, she was escorted out of the building without the ability to collect her personal belongings other than her purse, which was brought to her.  She was told to return at a later date to pick up her personal items. When Mrs. Crisell returned to T-Mobile to pick up her personal items, she was told that all the items remaining at her desk after December 11, 2011 had been destroyed.  Such personal items included, but were not limited to, personal documents, personal pictures, awards, customer kudos, etc.

44.     T-Mobile used Mrs. Crisell's taking of FMLA leave and her requests for reasonable accommodations as a negative factor in its decision to terminate Mrs. Crisell from her employment.

45.     T-Mobile failed to respond to, fulfill, and/or provide Mrs. Crisell's requested reasonable accommodations prior to terminating her employment.

46.     At all times relevant hereto, except during the post-operative timeframes, Mrs. Crisell walked with the assistance of a cane.

47.     At all times relevant hereto, Mrs. Crisell was either severely limited from lifting, or unable to lift, an object that weighed over five pounds.  For example, when employee meetings were held by T-Mobile, Mrs. Crisell would have to request a co-worker to carry a chair into the meeting for her because she was unable to lift it.

48.     At all times relevant hereto, Mrs. Crisell experienced pain and difficulty completing tasks that required extensive writing or typing.  During the last eight to ten months of employment by T-Mobile, Mrs. Crisell wore braces on both of her hands, which assisted with her ability to type.

49.     At all times relevant hereto, Mrs. Crisell experienced constant, severe pain in her right and left hips, and her right shoulder.

50.     At all times relevant hereto, Mrs. Crisell experienced the constant sensation that her right arm was asleep.

## COUNT I

### INTENTIONAL DISCRIMINATION IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. §§ 12101, *et seq.*)

51.     Mrs. Crisell realleges the allegations contained above as if the same were set forth in full herein.

52.     At all times relevant hereto, Mrs. Crisell was a qualified individual with a disability.

53.     Beginning in or about April 2010, Mrs. Crisell advised T-Mobile of her diagnosed disabilities.

54.     Beginning in or about April 2010, Mrs. Crisell was treated by T-Mobile as having a physical disability that substantially limited one or more of her major life activities.

55.    At all times relative hereto, Mrs. Crisell had the requisite skill, experience, education, and other job-related requirements of a Customer Service Representative and was able to perform the essential functions of her job.

56.    T-Mobile unlawfully and intentionally discriminated against Mrs. Crisell because of her disabilities by, *inter alia*:

a.   Not making reasonable accommodations available to Mrs. Crisell;

b.   Limiting, segregating, or classifying Mrs. Crisell in a way that adversely affected her employment opportunities or status;

c.   Utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability;

d.   Denying employment opportunities to Mrs. Crisell, who is an otherwise qualified individual with a disability, because of T-Mobile's obligation to make reasonable accommodations related to Mrs. Crisell's requests for such accommodations as necessitated by her physical disabilities;

e.   Using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out Mrs. Crisell as a qualified individual with a disability, which said qualification standards, employment tests, or other selection criteria are not job-related or consistent with business necessity; and

f.   Engaging in a contractual or other arrangement or relationship that has the effect of subjecting Mrs. Crisell to discrimination due to her disabilities.

57.    T-Mobile terminated Mrs. Crisell's employment because of her disabilities.

58.    As a direct and proximate result of T-Mobile's unlawful and intentional discrimination against Mrs. Crisell because of her disability, she has suffered severe economic

and non-pecuniary damages, including but not limited to loss of past and future wages, retirement benefits, healthcare benefits, other fringe benefits, as well as severe emotional and physical distress, loss of enjoyment of life, inconvenience, and other losses.

59.     Mrs. Crisell is further entitled to punitive damages as a result of T-Mobile's unlawful discrimination against her because such unlawful discrimination occurred with malice or with reckless indifference to Mrs. Crisell's federally protected rights.

60.     As a direct and proximate result of T-Mobile's conduct, Mrs. Crisell is entitled to all relief afforded by law, including but not limited to 42 U.S.C. §§ 12111, *et seq.*; 42 U.S.C. §§ 12201, *et seq.*; 42 U.S.C. § 1981a; and 42 U.S.C. §§ 2000e-4–6, 8, 9.

## COUNT II

### INTENTIONAL DISCRIMINATION IN VIOLATION OF
### THE IDAHO HUMAN RIGHTS ACT
### (Idaho Code § 67-5909)

61.     Mrs. Crisell realleges the allegations contained above as if the same were set forth in full herein.

62.     At the time of the discriminatory conduct alleged herein, Mrs. Crisell was a qualified individual with a disability.

63.     At the time of the discriminatory conduct alleged herein, Mrs. Crisell had the requisite skill, experience, education, and other job-related requirements of a Customer Service Representative and was able to perform the essential functions of her job.

64.     Mrs. Crisell was treated by T-Mobile as having physical disabilities that substantially limited one or more of her major life activities.

65.     T-Mobile unlawfully and intentionally discriminated against Mrs. Crisell because of her disabilities by, *inter alia*:

a.   Not making reasonable accommodations available to Mrs. Crisell;

b.   Limiting, segregating, or classifying Mrs. Crisell in a way that adversely affected her employment opportunities or status;

c.   Utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability;

d.   Denying employment opportunities to Mrs. Crisell, who is an otherwise qualified individual with a disability, because of T-Mobile's obligation to make reasonable accommodations related to Mrs. Crisell's requests for such accommodations as necessitated by her physical disabilities;

e.   Using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out Mrs. Crisell as a qualified individual with a disability, which said qualification standards, employment tests, or other selection criteria are not job-related or consistent with business necessity; and

f.   Engaging in a contractual or other arrangement or relationship that has the effect of subjecting Mrs. Crisell to discrimination due to her disabilities.

66.   T-Mobile terminated Mrs. Crisell's employment because of her disabilities.

67.   As a direct and proximate result of T-Mobile's unlawful and intentional discrimination against Mrs. Crisell because of her disability, she has suffered severe economic and non-pecuniary damages, including but not limited to loss of past and future wages, retirement benefits, healthcare benefits, other fringe benefits, as well as severe emotional and physical distress, loss of enjoyment of life, inconvenience, and other losses, and she is entitled to relief as allowed by Idaho Code § 67-5908, including attorney fees and costs, all in amounts to be determined at trial.

68.    T-Mobile's acts are extreme deviations from reasonable standards of conduct and were done willfully, recklessly, and/or with malice.  Mrs. Crisell reserves the right to seek leave of Court to amend her Complaint to allege punitive damages.

## COUNT III

### INTERFERENCE WITH EXERCISE OF RIGHTS
### IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### (29 U.S.C. §§ 2601, *et seq.*)

69.    Mrs. Crisell realleges the allegations contained above as if the same were set forth in full herein.

70.    At all times relevant hereto, Mrs. Crisell suffered from serious health conditions that she repeatedly advised T-Mobile of.

71.    Mrs. Crisell exercised her rights under the FMLA.

72.    T-Mobile disallowed Mrs. Crisell to return to her job or an equivalent job after using protected FMLA leave.

73.    T-Mobile used the taking of Mrs. Crisell's prior FMLA leave as a negative factor in its decision to deny her October 2011 request for FMLA leave.

74.    T-Mobile used the taking of Mrs. Crisell's FMLA leave as a negative factor in its decision to terminate Mrs. Crisell from her employment.

75.    T-Mobile further unlawfully interfered with Mrs. Crisell's exercise of her FMLA rights by, *inter alia*:

a.    Advising Mrs. Crisell that her available FMLA leave had been exhausted, when it was not;

b.    Denying Mrs. Crisell FMLA leave that she was in fact entitled to;

c.    Denying Mrs. Crisell FMLA leave without any showing of undue hardship;

d.   Repeatedly requiring Mrs. Crisell to resubmit supporting documentation regarding her request for reasonable accommodation;

e.   Terminating Mrs. Crisell without allowing her sufficient time to satisfy T-Mobile's repeated requests for supporting documentation;

f.   Subjecting Mrs. Crisell to standards that were different than the standards applicable to other employees;

g.   Utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of Mrs. Crisell having taken FMLA leave; and

h.   Not making reasonable accommodations for Mrs. Crisell due to her prior FMLA leave, for which accommodations were made at different times, and which required different types of leave.

76.   The conduct of T-Mobile and its agents, as herein alleged, unlawfully interfered with, restrained, and/or denied Mrs. Crisell's exercise of, or the attempt to exercise, rights afforded her by the FMLA.

77.   As a direct and proximate result of the unlawful and intentional discrimination against Mrs. Crisell because of her FMLA absences and because of her assertion of her FMLA rights, Mrs. Crisell has suffered severe economic and non-pecuniary damages, including but not limited to loss of past and future wages, retirement benefits, healthcare benefits, other fringe benefits, as well as severe emotional and physical distress, loss of enjoyment of life, inconvenience, and other losses, and she is entitled to relief as allowed by 29 U.S.C. §§ 2601, *et seq.*, 42 U.S.C. § 1981a, and other applicable law.

## COUNT IV

## RETALIATION AND DISCRIMINATION
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## (29 U.S.C. §§ 2601, *et seq.*)

78.     Mrs. Crisell realleges the allegations contained above as if the same were set forth in full herein.

79.     At all times relevant hereto, Mrs. Crisell suffered from serious health conditions that she repeatedly advised T-Mobile of.

80.     Mrs. Crisell exercised her rights under the FMLA.

81.     T-Mobile disallowed Mrs. Crisell from taking FMLA leave without interference or harassment by T-Mobile.

82.     T-Mobile engaged in activities that tended to chill the exercise of Mrs. Crisell's rights under the FMLA.

83.     T-Mobile used the taking of Mrs. Crisell's prior FMLA leave as a negative factor in its decision to deny her October 2011 request for FMLA leave.

84.     T-Mobile used the taking of Mrs. Crisell's FMLA leave as a negative factor in its decision to terminate Mrs. Crisell from her employment.

85.     T-Mobile further unlawfully retaliated and discriminated against Mrs. Crisell because of her disability by, *inter alia*:

        a.   Interfering with the length and dates of leave by advising Mrs. Crisell that her available FMLA leave had been exhausted, when it was not;

        b.   Denying Mrs. Crisell FMLA leave that she was in fact entitled to;

        c.   Denying Mrs. Crisell FMLA leave without any showing of undue hardship;

        d.   Repeatedly requiring Mrs. Crisell to resubmit supporting documentation

regarding her request for reasonable accommodation;

      e.   Mischaracterizing or misidentifying Mrs. Crisell's FMLA leave;

      f.   Terminating Mrs. Crisell without allowing her sufficient time to satisfy T-Mobile's repeated requests for supporting documentation;

      g.   Subjecting Mrs. Crisell to standards that were different than the standards applicable to other employees;

      h.   Utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of Mrs. Crisell having taken FMLA leave; and

      i.   Not making reasonable accommodations for Mrs. Crisell due to her prior FMLA leave, for which accommodations were made at different times, and which required different types of leave.

86.    The conduct of T-Mobile and its agents, as herein alleged, unlawfully interfered with, restrained, and/or denied Mrs. Crisell's exercise of, or the attempt to exercise, rights afforded her by the FMLA.

87.    As a direct and proximate result of the unlawful and intentional discrimination against Mrs. Crisell because of her FMLA absences and because of her assertion of her FMLA rights, Mrs. Crisell has suffered severe economic and non-pecuniary damages, including but not limited to loss of past and future wages, retirement benefits, healthcare benefits, other fringe benefits, as well as severe emotional and physical distress, loss of enjoyment of life, inconvenience, and other losses, and she is entitled to relief as allowed by 29 U.S.C. §§ 2601, *et seq.*, 42 U.S.C. § 1981a, and other applicable law.

## COUNT V

## WRONGFUL TERMINATION

88.     Mrs. Crisell realleges the allegations contained above as if the same were set forth in full herein.

89.     At all times relevant hereto, Mrs. Crisell had a valid and enforceable at-will contract of employment with T-Mobile.

90.     T-Mobile terminated Mrs. Crisell's employment contract for a reason that contravenes public policy against discrimination against employees who exercise their rights under the ADA, the FMLA, the Idaho Human Rights Act, and the internal human relations policies established by T-Mobile.

91.     As a direct and proximate result of T-Mobile's wrongful termination of Mrs. Crisell's employment, Mrs. Crisell has suffered severe economic and non-pecuniary damages, including but not limited to a loss of past and future wages, retirement benefits, other fringe benefits, and future employability, as well as severe emotional and physical distress, loss of enjoyment of life, inconvenience, and other damages to be proven at trial.

92.     T-Mobile's acts were an extreme deviation from reasonable standards of conduct and were done willfully, recklessly, and/or with malice.  Mrs. Crisell reserves the right to seek leave of Court to amend her Complaint to allege punitive damages.

### DAMAGES ALLEGATIONS AND PRAYER FOR RELIEF

WHEREFORE, Mrs. Crisell demands that judgment for the damages herein alleged be entered against T-Mobile as follows:

1.     That as a result of T-Mobile's conduct, Mrs. Crisell has suffered a loss of, and is entitled to recover, past and future economic and non-economic damages, including but not

limited to a loss of past and future wages, fringe benefits, and future employability, as well as severe emotional and physical distress, loss of enjoyment of life, inconvenience, and other losses, all in specific amounts to be proven at trial.

2.      That as a result of T-Mobile's conduct, Mrs. Crisell is entitled to relief afforded by law, including but not limited to 42 U.S.C. §§ 12111, *et seq.*; 42 U.S.C. §§ 12201, *et seq.*; 42 U.S.C. § 1981a; 42 U.S.C. §§ 2000e-4–6, 8, 9; 29 U.S.C. §§ 2601, *et seq.*; 29 U.S.C. § 2617(a); 42 U.S.C. § 1981a; and Idaho Code § 67-5908.

3.      That as a result of T-Mobile's intentional discrimination and retaliatory conduct and interference with Mrs. Crisell's employment because of her disabilities and serious health conditions, FMLA absences, and assertion of FMLA and other disability rights, which was done with malice or with reckless indifference to her federally protected rights, Mrs. Crisell is entitled to punitive damages in an amount to be determined at trial.

4.      That as a result of T-Mobile's conduct, Mrs. Crisell has had to retain counsel and, pursuant to 42 U.S.C. § 1981a; 42 U.S.C. § 12205; 28 U.S.C. § 2617(a)(3); Idaho Code §§ 12-120(3) and 12-121; and other appropriate rules, including the Federal Rules of Civil Procedure, Mrs. Crisell is entitled to recover her reasonable attorney fees and costs incurred as a result of having to bring this action.

5.      Mrs. Crisell reserves the right to seek leave of Court to amend her Complaint to allege punitive damages as against T-Mobile pursuant to, but not limited to, Idaho Code §§ 6-1604 and 67-5908(3)(e), and 42 U.S.C. § 1981a.

6.      Mrs. Crisell also requests such other and further relief as the Court deems just, equitable, and appropriate.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all of the issues in her Complaint, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED this 20th day of March, 2013.

JONES & SWARTZ PLLC


By    */s/ JOY M. VEGA*
                    ERIC B. SWARTZ
                    JOY M. VEGA