UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORETTA A. CRISELL, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>T-MOBILE USA, INC., a Delaware corporation,<br><br>    Defendant. | Case No. 1:13-cv-00134-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is defendant T-Mobile USA, Inc.'s motion for summary judgment. (Dkt 23). The Court heard oral argument on June 24, 2014 and now issues its decision. For the reasons explained below, the Court will grant the motion.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu,* 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby,* 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond

the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (*quoting Forsberg v. Pac. Northwest Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

## FACTS

Loretta Crisell worked as a customer service representative at T-Mobile for roughly two years, from January 26, 2010 to December 11, 2011. She faced a variety of medical issues during this time, primarily because she suffers from a bone-wasting disease known as avascular necrosis. Among other things, this disease required Crisell to undergo two hip-replacement surgeries in 2010. She took leaves of absence from T-Mobile to have these surgeries and to deal with other medical issues. Additionally, although Crisell was hired as a fulltime employee – and thus expected to work forty hours per week, in five eight-hour shifts – she worked a reduced schedule for much of the time she was with T-Mobile.

In January 2011, after she had been with the company for one year, Crisell became eligible for leave under the Family and Medical Leave Act (FMLA). The FMLA entitles

eligible employees up to 480 hours (12 weeks) of unpaid leave during a 12-month period. *See* 29 U.S.C. § 2612(a)(1)(D). By early November 2011, Crisell had exhausted her 480 hours of FMLA leave and her doctor had told T-Mobile it would be another eight months before Crisell could work full-time.[1] *See Medical Documentation for Oct. 31, 2011 Request for Accommodation, Ex. 21 to Crisell Dep.*, Dkt. 23-5, ¶ 4 at DEF00175,

On November 28, 2011, Crisell met with her supervisor and a human resources employee.[2] At this meeting, T-Mobile asked Crisell if there was any accommodation that would allow her to work fulltime. (The call center where Crisell worked does not have part-time positions for customer service representatives.) Crisell said she had a doctor's appointment on December 15, 2011, and she would ask her doctor if he would "get [her] released to work full time." *Crisell Dep.,* Dkt, 23-4, 134:21 to 135:9. Crisell also says that during the meeting, T-Mobile said it was willing to employ her fulltime, but was unwilling to wait until her December 15 doctor's appointment to find out if she could, in fact, work fulltime.

T-Mobile terminated Crisell on December 11, 2011, four days before the December 15 appointment. Crisell kept the appointment anyway. After this visit, Physician's Assistant Craig Jamison indicated that Crisell could work an eight-hour shift

---

[1] "[T]he FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

[2] The parties dispute some aspects of what occurred at this meeting. For purposes of this motion, the Court has resolved the factual disputes in Crisell's favor.

if she could tolerate the pain. As he put it,

> I think, she is safe in regards to work activities to whatever level she tolerates. This is in regards to work activities that she describes at her previous jobs. If she could tolerate and they would take her back, I think the eight-hour shifts would be physically safe for her.

*Dec. 15, 2011 Entry Signed by Jamison, Ex. 27 to Crisell Dep.*, Dkt. 23-6, at 2.

Although Jamison alludes to the possibility of Crisell returning to work at T-Mobile, there is no evidence that she attempted to return to T-Mobile. Instead, a few days after her December 15 appointment, Crisell applied for Social Security disability benefits. In her application, she asserted that she became disabled on December 11, 2011. *See Dec. 21, 2011 App. Summary for Supp. Sec. Income, Ex. 22 to Crisell Dep.*, Dkt. 23-5, at 1.

The Social Security Administration initially denied Crisell's application, finding she could "perform work activity similar to that she has done in the past as a call center worker . . . ." *See Mar. 16, 2012 Disability Determination Explanation*, Dkt. 23-7, at 14. Crisell appealed this ruling, and requested a hearing before an Administrative Law Judge.

At the hearing, Jamison's statement regarding Crisell's ability to work an eight-hour day was discussed. During the following exchange with Judge Molleur, Crisell's lawyer pointed out that Jamison never directly said she could tolerate an eight-hour workday:

| | |
|---|---|
| JUDGE MOLLEUR: | Dr. Smith[3] kind of equivocates. He signs what's in 7F because he said also that if she can tolerate eight hours then she can – then eight hours is physically safe for her. I guess what he's saying is |
| MS. BUBLITZ: | Well, that was the PA – yeah. That was actually the physician's assistant that wrote that and that's you know, logically, if she can tolerate it, she can do it is the quote and I wrote that down and I thought about that. That doesn't presume she can tolerate it. |
| JUDGE MOLLEUR: | Yeah. That's how – that kind of begs the question is can you tolerate it and what she's saying is she can't tolerate it anymore. |
| MS. BUBLITZ: | Right. |

*Nov. 12, 2012 Hearing Tr.*, Dkt. 23-6, at 31:16 to 32:3.

Also during the hearing, Crisell testified as to physical condition while she was working at T-Mobile. Among other things:

- Crisell testified that she experienced significant hand pain while at T-Mobile. She testified that she had been diagnosed with carpal tunnel "back in the early 2000s" and that she had been "wearing braces ever since then, especially when it gets bad but *it got so bad at T-Mobile*. I mean like I say, I would almost be in tears, . . . . sometimes the pain gets so bad that I can't concentrate on my job and sometimes I'll be talking to a customer and want to cry like I want to cry right now because it really – it hurts." *Nov. 27, 2012 Hearing Tr.*, Dkt. 23-6, at 25:23 to 26:10 (emphasis added).

---

[3] Jamison apparently worked in Dr. Smith's office. Crisell remembers keeping a December 15, 2011 appointment, but she does not remember if she saw Dr. Smith or Jamison. *See Crisell Dep.*, Dkt. 23-4, at 168:23 to 169:5 ("I don't recall. I usually saw Dr. Smith or Dr. Jamison, one or the other."). The Social Security Administration's paperwork attributed Jamison's statement to Dr. Smith.

- Crisell testified that she could not perform a job that required her to sit down for six hours of an eight-hour work day because she would get "too stiff and too store." *Id.* at 23:3. She explained that "*when I was working at T-Mobile*, . . . if I sat in the chair for a little bit too long, even a couple hours instead of standing up, if I got really busy, you know, on the phone with somebody, I would stand up and it would take me a good five minutes just to regroup so I could walk because of my feet . . . ." *Id.* at 23:5-10 (emphasis added).

- Crisell testified that she began missing work while she was at T-Mobile due to pain. "I did start missing a lot more days than – you know, than the one to three, maybe four to five days and I mean I was just in a lot of pain. I just couldn't deal with it anymore. My hands were going numb. I mean it was awful." *Id.* at 14:14-18.

Ultimately, Crisell convinced the agency that her condition was severe enough to prevent her from working even a reduced schedule. Judge Molleur issued an opinion finding Crisell disabled as of December 12, 2011, the day after T-Mobile terminated her. *Id.* at 35:21-22. As a result, Crisell began receiving $1,635 per month in disability benefit (or $19,620 per year), which is slightly less than what she had been earning, as gross pay, at T-Mobile. *See Defendant's Statement of Facts* ¶ 42 (Crisell's gross pay during her last year of employment was $21,376.14).

In March 2013, a few months after Social Security Administration's final determination, Crisell sued T-Mobile in this Court. She now asserts that as of December 2011 she was capable of working fulltime at T-Mobile, with accommodation. She alleges that T-Mobile violated the Americans with Disabilities Act (ADA), the Idaho Human Rights Act (IHRA), and the FMLA.

# DISCUSSION

**1.    The ADA Claims**

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Crisell alleges two separate claims under the ADA. First, she alleges that T-Mobile failed to reasonably accommodate her. Second, she alleges that T-Mobile fired her because of her disability.

To succeed on either claim, plaintiff must establish that she is a "qualified individual" under the ADA, meaning that she can perform the essential functions of her job with reasonable accommodation. *See Allen v. Pac Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (listing the prima facie elements of an accommodation claim); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1253 (9th Cir. 1999) (listing the prima facie elements of a discrimination claim).

Crisell's ADA claims fail because the statements she made in connection with the social security proceedings demonstrate that as of December 11, 2011, she was unable to perform the essential functions of her job, even with reasonable accommodation. The statements she now makes directly contradict her earlier statements and thus cannot save her claims from summary judgment.

In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 797 (1999), the Supreme Court held that "the pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." The Court explained

that there are many situations "in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id.* at 803; *see also Johnson v. Oregon*, 141 F.3d 1361, 1369 (9th Cir. 1998). By the same token, however, the Court held that "an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" *Cleveland*, 526 U.S. at 798.

*Cleveland* does not necessarily call upon courts to invoke formal judicial-estoppel theories when a plaintiff makes inconsistent statements in pursuing her ADA claim. Rather, as the Ninth Circuit has explained, a "straightforward summary judgment analysis, rather than theories of judicial estoppel will be appropriate in most cases." *Johnson,* 141 F.3d at 1369. The reason is that the inconsistent statements plaintiff made before the Social Security Administration may be "so damaging that no rational trier of fact could rule in plaintiff's favor." *Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.*, 172 F.3d 1176, 1179 (9th Cir. 1999). Courts should invoke judicial estoppel principles when a plaintiff plays "fast and loose with the courts" or takes a position "tantamount to a knowing misrepresentation to or even fraud on the court." *Johnson,* 141 F.3d at 1369.

Here, Crisell's ADA claims fail under a traditional summary-judgment analysis. Additionally, the Court is persuaded to invoke the judicial-estoppel doctrine.

### A. Traditional Summary-Judgment Principles

Turning first to traditional summary-judgment principles, Crisell cannot escape the statements she made while pursuing disability benefits. She appeared before the ALJ in November 2012 in an effort to convince him that she had been disabled as of December *2010* – a year before she was terminated. Toward the end of the hearing, Crisell agreed to amend her onset date to December 12, *2011*, but the larger point is that the hearing focused on Crisell's condition as of and before December 2011. Crisell thus gave testimony, as detailed above, about her inability to perform her job at T-Mobile, even working the reduced hours T-Mobile had allowed. Crisell's testimony before the ALJ is so inconsistent with her current statements (*i.e.*, that as of December 2011, she was capable of performing her job) and thus so damaging, that no rational trier of fact could rule in her favor.

Crisell attempts to avoid her earlier testimony by arguing that the November 2012 hearing focused solely on her condition as of that time – not as of any earlier date. This contention finds no support in the record. Even a cursory review of the record, and in particular the November 2012 hearing transcript, reveals that Crisell is directly contradicting her earlier statements regarding her inability to perform her job. Her ADA claims will therefore be rejected without further inquiry. *See, e.g., Opsteen v. Keller Structures, Inc.,* 408 F.3d 390, 392 (7th Cir. 2005) (if factual representations made to the Social Security Administration "show inability to do the job then an ADA claim may be rejected without further inquiry").

### B. Judicial Estoppel

The Court has also determined that the judicial-estoppel doctrine prevents Crisell from arguing she is a "qualified individual" under the ADA. *See generally Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990) (judicial estoppel is "invoked by a court at its discretion"). If Crisell had simply made a few marginally inconsistent statements before the Social Security Administration and before this Court, the Court might not be inclined to invoke the judicial-estoppel doctrine. But Crisell's "particular representations are so inconsistent that they amount to an affront to the court, . . . ." *Johnson,* 141 F.3d at 1369. Additionally, Crisell is playing games with her medical record and with the statements her lawyer made during the social security proceedings.

Judicial estoppel is designed "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell*, 893 F.2d at 1037). Courts generally consider three factors when deciding whether to apply the doctrine. *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001). First, courts determine whether "a party's later position [is] clearly inconsistent with its earlier position." *Id.* Second, courts consider whether a litigant successfully persuaded a court to accept one position, so that judicial acceptance of an incompatible position in a subsequent adjudication "would create the perception that either the first or the second court was

misled." *Id*. Finally, courts take into account "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* These factors are not "inflexible prerequisites or an exhaustive formula" for deciding when to apply judicial estoppel. *Id*. Still, though, the second prong of this test must be met for judicial estoppel to apply. *Interstate Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998).

At a minimum, the first two factors are present here. Crisell has taken inconsistent positions and she convinced the ALJ to accept her earlier position. Judge Molleur found that Crisell was unable to perform her job as of December 2011.

What is particularly troubling here is the manner in which Crisell attempts to avoid the positions she took before the Social Security Administration. She effectively asks this Court to ignore her social-security lawyer's earlier statements and arguments. She also points to the same medical record to make opposing and contradictory points.

Regarding her attempts to distance herself from her social-security lawyer, Crisell takes a very simplistic approach – she says that *she* was not talking; her lawyer was. As an example, in May 2012, Crisell's attorney sent a letter to the ALJ, indicating that Crisell had been disabled as of December 2010. The letter states,

> I am making a motion to amend the onset date for Ms. Crisell's claims
> for Title II and Title XVI benefits to December 1, 2010, because she
> was unable to work due to her multiple impairments as of that date.

*May 4, 2012 Letter from Jessica Bublitz to ODAR-Boise*, Ex. 25 to Crisell Dep., Dkt. 23-5, at 65. T-Mobile relied on this letter to support the factual proposition that Crisell had

told the Social Security Administration she had been disabled since December 2010. Crisell, however, insisted that this was a disputed fact, based on her assertion that "[t]he letter from Ms. Bublitz is not testimony by Mrs. Crisell. The letter is an aspect of Ms. Bublitz's legal argument." *Plaintiff's Statement of Disputed Facts,* Dkt. 31-1, ¶ 17.

Crisell also attempts to explain away this letter by pointing out that Bublitz did not send it until May 2012 – after her doctor said Crisell was "unemployable due to ongoing constant shoulder pain." *See id.* (*quoting Apr. 5, 2012 Note from Dr. John Q. Smith*, Dkt. 23-6, at MED00224). But the date the letter was sent is irrelevant; the point of the letter was to say Crisell had been disabled since December 2010. Crisell's treatment of this letter is the sort of gamesmanship judicial estoppel is meant to prevent.

Crisell also attempts to use the same documents in her medical record to make opposing points. Most notable is Crisell's treatment of Jamison's December 15, 2011 statement about Crisell's ability to work eight-hour shifts. When Crisell appeared before the ALJ, her lawyer was dismissive of Jamison's statements, pointing out that he never actually said Crisell could work fulltime. Yet before this Court, Crisell relies on the same medical record – specifically pointing to Jamison's December 15 statement – to support her argument that if T-Mobile had only waited until December 15, "she would have gotten the medical release" to work fulltime. *Response,* Dkt. 31, at 6. Again, the judicial-estoppel doctrine does not permit such gamesmanship. The Court will judicially estop Crisell from arguing she is a "qualified person" under the ADA. Summary judgment in T-Mobile's favor is thus appropriate on the ADA claims.

2.  **The Idaho Human Rights Act (IHRA) Claim**

The Court will also grant summary judgment on Crisell's IHRA claim. This claim is substantially identical to the ADA discrimination claim. This Court has previously recognized that if a plaintiff cannot establish she is a "qualified individual," as defined by the ADA, then an IHRA claim necessarily fails. *See Johnson v. Bd. of Trustees of Boundary Cnty.*, Case No. CV-09-61-BLW, 2010 WL 530070, at *7-8 (D. Idaho Feb. 9, 2010).

3.  **The FMLA Claims**

Finally, the Court will grant summary judgment to T-Mobile on Crisell's FMLA claims. Crisell concedes that her FMLA retaliation claim should be dismissed, but contends that her FMLA interference claim should proceed to trial. The Court is not persuaded.

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001).

There is no dispute that Crisell received all 480 hours (plus an additional 42 hours) of FMLA leave during 2011. As such, she cannot establish any damages in terms of her right to "use a certain amount of leave . . . ." *Id.* Crisell argues that T-Mobile interfered with her right to return to an equivalent job after using her leave. Specifically, she says that T-Mobile "refused to restore Mrs. Crisell to her original position as a fulltime

Customer Service Representative . . . or to an equivalent position." *Response*, Dkt. 31, at 14. But T-Mobile offered Crisell the same job she had – as a fulltime customer service representative – after she had exhausted her FMLA leave. *See Crisell Dep.* 136:19 to 137:7.[4] Moreover, Crisell successfully convinced the ALJ that she could not, in fact, work as a fulltime customer services representative – even on the reduced scheduled T-Mobile had been allowing. Thus, the Court cannot find a triable issue of fact as to whether T-Mobile refused to restore Crisell to her former position as a fulltime customer service representative. If an employee "is unable to perform an essential function of the position . . . the employee has no right to restoration to another position under the

---

[4] At her deposition, Crisell testified as follows:

Q: What was kind of generally discussed [at the December 11, 2011 meeting where Crisell was ultimately terminated]?

A. It was discussed already that they wanted me to come back to work full time, and I was just asking for a few more days until I saw my doctor.

Q. From your perspective, were they giving you the choice to either start working full time or have your employment terminated?

A. Yes. That's the way I saw it, yes.

Q. Do you believe there was any reason behind T-Mobile's decision to terminate your employment other than they wanted you to be able to work full time?

A. Absolutely not. I was a very hard worker, a very hard worker. As a matter of fact, I was number one in the pod the day that they let me go.

*Crisell Dep.*, Dkt. 23-4, at 136:19 to 137:7.

FMLA." 29 C.F.R. § 825.214(b). The Court will grant summary judgment on both FMLA claims.

## 4. Wrongful Termination

Crisell's claim for wrongful termination in violation of public policy is based entirely on her claim that T-Mobile violated the ADA, the FMLA, and the IHRA. *See Response,* Dkt. 31, at 19 ("In the event that T-Mobile is found liable of violations of the ADA, FMLA, or IHRA, Idaho imposes this additional violation."). Because Crisell cannot to establish that T-Mobile violated any of these statutes, her wrongful termination claim fails as well.

## ORDER

Defendant T-Mobile USA, Inc.'s motion for summary judgment (Dkt. 23) is **GRANTED.** Judgment will be entered separately.

DATED: July 28, 2014

B. Lynn Winmill
Chief Judge
United States District Court